IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| NOEL LEE WILSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:15-CV-109 (LJA) |
| | : | |
| DEPUTY SHERIFF KARLA STOWE; | : | |
| ASSOCIATION OF COUNTY | : | |
| COMMISSIONERS OF GEORGIA | : | |
| INTERLOCAL RISK MANAGEMENT | : | |
| AGENCY(ACCG-IRMA), | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court are Defendant Karla Stowe's Motion for Summary Judgment (Doc. 14) and Defendant ACCG-IRMA's Motion to Dismiss for Failure to State a Claim (Doc. 20). For the following reasons, Stowe's Motion for Summary Judgment (Doc. 14) and ACCG-IRMA's Motion to Dismiss (Doc. 20) are **GRANTED**.

## FACTUAL BACKGROUND[1]

Plaintiff Noel Lee Wilson is a licensed private detective and investigator. (Doc. 14-1, ¶ 6). Defendant Karla Stowe has been employed by the Crisp County Sheriff as an investigator since 2000. *Id.* at ¶ 1. As an investigator, Stowe is responsible for the investigation of allegations regarding the commission of crimes, and Stowe is authorized to seek warrants for the arrest of individuals believed to have committed crimes. *Id.* at ¶ 2.

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answer to the Complaint (Doc. 7), Defendant's Statement of Undisputed Facts (Doc. 14-1), Plaintiff's Statement of Facts (Doc. 22-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1

Defendant ACCG-IRMA is a governmental entity that serves as a surety for the Sheriff's Department of Crisp County, Georgia. (Doc. 20-1 at 2). H W Billy Hancock is the Sheriff of Crisp County, and Mark Casteel is a Crisp County citizen. *Id.* at ¶¶ 9, 56. Hancock and Casteel were named Defendants, but were subsequently dismissed from the case.

Tommy Linville hired Plaintiff to investigate Amy Lane Linville and determine whether she was using illegal drugs or was otherwise unfit to raise a minor child. (Doc. 14-1 at ¶ 8). On the night of July 6, 2013 and the early morning hours of July 7, 2013, Plaintiff conducted surveillance of and made video recordings of Mark Casteel and Ms. Linville on a dock in front of Mr. Casteel's house, on a pontoon boat, and at the back of Mr. Casteel's house. *Id.* at ¶ 19. Plaintiff observed the activities of Mr. Casteel and Ms. Linville for approximately three hours, but Plaintiff did not video record their activities the entire time. *Id.* at ¶ 20. Plaintiff claims he was located on the neighbor's property the entire time that he surveilled Ms. Linville and Mr. Casteel. *Id.* at ¶ 24.

While Plaintiff was conducting surveillance, Mr. Casteel's dog began to bark. *Id.* at ¶ 27. When Mr. Casteel looked in the direction of the dog, he saw a red light emitting from the bushes, which he thought looked like the laser sight for a gun. *Id.* at ¶¶ 28-29. After seeing the red light, Ms. Linville went inside the house and Mr. Casteel retrieved a rifle and flashlight from the shed, which he pointed toward Plaintiff while telling him not to move. *Id.* at ¶¶ 30-32. Plaintiff started running, and then Mr. Casteel fired a shot into the air. *Id.* at ¶¶ 33-34. At that point, Plaintiff stopped running and Mr. Casteel held him at gunpoint until law enforcement arrived. *Id.* at ¶ 35. Deputy Sheriffs Daryl Smallwood and Cole Eason arrived at the scene approximately ten minutes after Plaintiff was apprehended by Mr. Casteel. *Id.* at ¶ 36. Smallwood and Eason briefly detained Plaintiff, but released him after he provided identification. *Id.* at ¶ 42.

On July 8, 2013, Stowe spoke with Mr. Casteel about the incident via telephone and Mr. Casteel told Stowe that Plaintiff's presence had terrified him and affected his ability to sleep. *Id.* at ¶ 43. On July 9, 2013, Stowe met with Mr. Casteel and Ms. Linville at the Casteel Property. (Doc. 14-3, ¶ 17). During that visit, Stowe says that Mr. Casteel told her he had seen Plaintiff pull into his driveway on two prior occasions, that he was afraid of Plaintiff,

2

and that, on the night in question, he discovered Plaintiff on his property. *Id.* at ¶¶ 18-19. After her visit, Stowe contacted the district attorney, Cheri Nichols, and subsequently sought warrants for the arrest of Plaintiff for the charges of criminal trespass and stalking. (Doc. 14-1, ¶¶ 48-49).

Stowe avers that, before she sought the warrants, she believed that: 1) Plaintiff entered the property of another without consent; 2) while on said property, Plaintiff secretly observed and video recorded Mr. Casteel and Ms. Linville while they were in a private place out of public view; 3) neither Mr. Casteel nor Ms. Linville consented to being observed or recorded; and 4) Mr. Casteel and Ms. Linville were terrified by the presence of Plaintiff on the Casteel property. (Doc. 14-3, ¶ 28). Stowe knew that Plaintiff was a licensed private investigator and was investigating Ms. Linville in relation to a custody dispute over Ms. Linville's son. (Doc. 22-4, at 30:14-20).

After the warrants were issued, Stowe telephoned Plaintiff to advise him of the warrants. (Doc. 14-1, ¶ 52). On July 15, 2013, Plaintiff turned himself in at the Crisp County Sheriff's Office and was placed under arrest. *Id.* at ¶ 53. Following his arrest, Plaintiff remained in custody for approximately six hours. *Id.* at ¶ 54. The warrants were dismissed on August 5, 2013. *Id.* at ¶ 55. Stowe admits that she failed to proofread the warrants, and that the warrant for criminal trespass should have said that Mr. Wilson entered on the property for an unlawful purpose rather than without an authorized representative's permission. (Doc. 22-4, at 43:20-45:5).

## PROCEDURAL HISTORY

On July 1, 2015, Plaintiff commenced this action against Defendants Hancock, Stowe, Casteel, and the ACCG-IRMA. (Doc. 1). On April 26, 2016, Defendants Hancock and Casteel were terminated from the case when the Court granted their Motion for Voluntary Dismissal of Defendants (Doc. 13). On July 13, 2016, Defendant Stowe filed a Motion for Summary Judgment (Doc. 14). Plaintiff responded on August 11, 2016 (Doc. 22), and Defendant Stowe replied on August 31, 2016 (Doc. 27). On July 25, 2016, Defendant ACCG-IRMA filed a Motion to Dismiss for Failure to State a Claim (Doc. 20).

Plaintiff responded on August 11, 2016 (Doc. 22), and Defendant ACCG-IRMA replied on September 8, 2016 (Doc. 28). As such, Defendant Stowe's Motion for Summary Judgment (Doc. 14) and Defendant ACCG-IRMA's Motion to Dismiss are both ripe for review. *See* M.D. Ga. L.R. 7.3.

Local Rule 56 requires that a respondent attach to the response "a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." M.D. Ga. L.R. 56. The Rule specifically requires that "response shall be made to each of movant's numbered material facts," and warns that "all material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials shall be deemed to have been admitted." *Id.* Although Plaintiff attached a Statement of Material Facts (Doc. 22-1), Plaintiff failed to respond to each of movant's numbered material facts. As such, those of Defendant Stowe's facts which have not been controverted by specific citations to the record are deemed to have been admitted. *See Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) *citing Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) *citing Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.

Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) *quoting* <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

## **DISCUSSION**

In his Complaint, Plaintiff alleges that his arrest violated the Fourth Amendment as incorporated by the Fourteenth Amendment, and that he was falsely imprisoned in violation of both the Fourth Amendment and the Substantive Due Process Clause of the Fourteenth Amendment. (Doc. 1, ¶¶ 39-40). Plaintiff also alleges state law claims of false arrest, false imprisonment, and unlawful search and seizure. (Doc. 1, ¶¶ 35-38).

**I.   Federal Claims**

As a threshold matter, the Court construes Plaintiff's claim for false imprisonment under the Substantive Due Process Clause of the Fourteenth Amendment as a claim for malicious prosecution under the Fourth Amendment. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, the appropriate analysis is under the Fourth Amendment because, "unlike the related cause of action for false imprisonment, [the cause of action for malicious prosecution] permits damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Because confinement is imposed pursuant to legal process even when "the warrant issued is invalid," and the right to "be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution," the Fourth Amendment controls this analysis. *Whiting v. Traylor*, 85 F.3d 581, 584 n.4 (11th Cir. 1996); *Carter v. Gore*, 557 Fed. Appx. 904, 906 (11th Cir. 2014). "To establish a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable searches and seizures and establish the elements of a malicious prosecution tort claim." *Rockel v. Watkins*, 673 F.Supp.2d 1356, 1364 (M.D. Ga. 2009).

Plaintiff seeks money damages from Defendant Stowe, and does not allege any facts suggesting that Stowe's alleged violations "occurred pursuant to a custom or policy of the municipality." *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, the Court finds that Plaintiff's claims are directed at Stowe in her individual capacity. *Id.* Defendant Stowe, however, is entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of

6

personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

In order for qualified immunity to apply, the governmental official must be acting in the scope of their discretionary authority when the alleged wrongs occurred. *Id.* "A governmental official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)). It is undisputed that Defendant Stowe filed for warrants in the ordinary course of performing her duties as an investigator. Furthermore, Courts commonly hold that investigators are acting within their discretionary authority when they file affidavits and apply for arrest warrants, even if the warrants are unfounded. *See Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1283 (11th Cir. 1998); *Horton v. Williams*, 572 F.Supp.2d 1292, 1298 (M.D. Ala. 2008); *Joyce v. Adams*, 2007 WL 2781196, at *5 (S.D. Ga. Sept. 20, 2007).

"Once the defendant establishes that [she] was acting within [her] discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. "In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was clearly established at the time [she] did it." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The Constitution prohibits an officer from seeking a warrant where "a reasonably well-trained officer…would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id.* The Eleventh Circuit directs courts to review the evidence known to officers at the time they sought the warrant "with an eye to whether any reasonable officer

would have sought arrest and search warrants based on that information." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992). If the undisputed facts as known to Stowe at the time of issuance "constituted arguable probable cause, then summary judgment on the ground of qualified immunity is proper." *Id.* at 1569; *see also Rhodes v. Kollar*, 503 F.App'x 916, 922 (11th Cir. 2013) ("[I]n qualified immunity cases, the existence of 'arguable probable cause' will be enough to bar [malicious prosecution] claims."). "Showing arguable probable cause does not [ ] require proving every element of a crime." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010)."

Plaintiff argues that the trespass warrant was not based on probable cause because Stowe referred to the wrong section of the trespass statute in the warrant and she knew that Plaintiff was on the property as a licensed investigator. In Georgia, a person commits the offense of criminal trespass when he or she knowingly and without authority" either: 1) "enters upon the land or premises of another person or into any part of any vehicle, railroad car, aircraft, or watercraft of another person for an unlawful purpose;" or 2) enters upon the land or premises of another person or into any part of any vehicle, railroad car, aircraft, or watercraft of another person after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden." OCGA § 16-7-21. More to the point, it is unlawful for "any person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view." OCGA § 16-11-62.

Despite Stowe's mistaken reference to the wrong section of the trespass statute, it is undisputed that Stowe believed that Plaintiff committed trespass by entering onto the Casteel property without permission for the unlawful purpose of recording Mr. Casteel and Ms. Linwood without their consent in a private place. When a warrant contains a discrepancy, but the officer seeking the warrant knew the correct information when the warrant was sought, the officer does not lose the defense of qualified immunity. As the Court of Appeals held in *Pair v. City of Parker FL Police Dept.*, 383 Fed.Appx. 835, 840 (11th Cir. 2010, "[a] reasonable officer, knowing what Officer Wilson knew when the arrest

warrant was issued, would not have questioned whether probable cause to arrest Pair for meth possession existed merely because of the date discrepancy on the warrant." Likewise, regardless of the discrepancy in the warrant, a reasonable officer with Stowe's knowledge would not have questioned whether there was probable cause to arrest Plaintiff.

The Court further considers the principle that, when the warrant application "contains neither information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circumstances surrounding the alleged commission of the crime," the officer seeking or executing the warrant cannot rely on the defense of qualified immunity. *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406, 1410 (11th Cir. 1989); *see also Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994). Based on Stowe's undisputed belief that every element of the trespass statute was met- knowing and unauthorized entry, on land owned by another person, for the unlawful purpose of recording private activities- and her statement that she had personal knowledge of such in the warrant, the warrant is not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Malley*, 475 U.S. at 345.

Plaintiff also argues that the stalking warrant was not based on probable cause because Stowe was not aware of a pattern of harassing and intimidating behavior. In Georgia, "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-90(a)(1). "[T]he term 'harassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety…by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose." *Id.* Stowe testified that Mr. Casteel and Ms. Linville told her that they had "seen [Plaintiff] before and noticed him following them [sic]" and "watching" them. (Doc. 21-4 at 19:3-5, 28:2-3). Stowe also testified that Mr. Casteel and Ms. Linville told her they "were terrified when [Plaintiff] was found out on the property." *Id* at 21:9-11. Plaintiff argues that Stowe did not have evidence that he intended to intimidate or harass Mr. Casteel and Ms. Linville. In *Rhodes v. Kollar*, an Eleventh

9

Circuit panel addressed whether, in order to receive the protection of qualified immunity, an officer was entitled to qualified immunity in a malicious prosecution case, the officer was required to have evidence of the plaintiff's specific intent to commit theft when swearing out the affidavit for the plaintiff's arrest warrant. 503 F.App'x 916, 922 (11th Cir. 2013). The Court held that, "[a]lthough theft is a specific intent crime under Florida law, it is not necessary that an officer prove every element of the crime before making an arrest." *Id.* Thus, the officer was entitled to qualified immunity because he had arguable probable cause that the plaintiff committed the crime of theft when he swore out the warrant. *Id.* Likewise, in this case, Stowe had evidence of a pattern of behavior directed at Mr. Casteel and Ms. Linville that was causing them fear. Stowe was not required to have specific evidence of Plaintiff's intent to harass and intimidate before swearing out a warrant for his arrest. The undisputed facts as known to Stowe at the time of issuance constituted "arguable probable cause" and a "reasonable officer would have sought [an ]arrest … warrant[ ]" for stalking. *Lowe*, 958 F.2d at 1570. As such, Stowe is protected by qualified immunity, and Plaintiff's federal claims against her must be dismissed. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

## II.   State Law Claims

This Court has dismissed Plaintiff's § 1983 claim on the basis of qualified immunity. Plaintiff also alleges claims under Georgia state law. Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citing

P*almer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir.1994). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 70 F.3d at 1089.

The Court finds that the state law claims asserted by Plaintiff should be dismissed in order to allow him to pursue those claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. In addition, Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F.App'x 78, 82 n.1 (11th Cir. 2012); *see also. See* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). Although it may be more convenient for Plaintiff to continue litigating his case in this Court, neither judicial economy nor fairness to other litigants support retaining jurisdiction over the state law claims while delaying justice in other cases where the Court retains original jurisdiction. Accordingly, Plaintiff's state law claims are **DISMISSED without prejudice**.

## MOTION TO DISMISS

Defendant ACCG-IRMA moves to dismiss Plaintiff's Complaint for failure to state a claim. (Doc. 20-1). Federal Rule of Civil Procedure 12(b)(6) requires that the complaint plead enough facts to state a claim for relief that is plausible—not just conceivable—on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," it is not required "to accept the labels and legal conclusions in the complaint as true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

11

At bottom, "the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291.

The only reference to ACCG-IRMA in Plaintiff's complaint is that the governmental entity "is being sued in its capacity as surety for the Sheriff's Department of Crisp County, Georgia, pursuant to Official Code of Georgia §15-16-5, et seq." (Doc. 1, ¶ 5). The cited statutory provision states that "[t]he sheriffs shall give a bond in the sum of $25,000.00…conditioned for the faithful accounting for all public and other funds or property coming into the sheriff's or their deputies' custody, control, care, or possession." O.C.G.A. § 15-16-5.[2] The allegations of Plaintiff's complaint all relate to his arrest and confinement and have nothing to do with damages owed by the Sheriff's Department or property in control of the Sheriff's office. As such, Plaintiff has failed to state a claim against ACCG-IRMA on which relief may be granted and Plaintiff's claims must be dismissed.

## CONCLUSION

In light of the foregoing, Stowe's Motion for Summary Judgment (Doc. 14) and ACCG-IRMA's Motion to Dismiss (Doc. 20) are **GRANTED.**

**SO ORDERED**, this   13th   day of    March   , 2017.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2] In Plaintiff's response to ACCG-IRMA's Motion to Dismiss (Doc. 22-2), Plaintiff states that he "may have inadvertently cited the wrong code section relating to Sheriff's and their sureties." Plaintiff intended to cite to a provision stating that "any person who claims damages of any principal officer for the act of his deputy may, at his option, bring an action on the deputy's bond instead of on that of the principal, in the same manner as an action may be brought on the principal's bond." O.C.G.A. § 45-4-26. This is an impermissible attempt to amend Plaintiff's pleading. *See* Fed. R. Civ. P. 15(a)(1). The appropriate course would be to file an amended complaint, which Plaintiff has not done. Additionally, this statutory provision is inapposite Plaintiff's claims. Plaintiff is not seeking damages of a principal officer for the act of his deputy. Plaintiff is seeking damages from an individual officer for her own actions.